THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
FREDERICK LOCKHART,

                         Plaintiff,

         -against-

CARLOS COREAS, J & E MEAT CORP., MARIA
OJEDA, SABRINA'S CHECK CASHING INC.,
SHAO MEI ZHEN, TROPICAL JERK &
SEAFOOD CENTER, and TWO COUNTY
REALTY CO.,

                         Defendants.
--------------------------------------------------------------X

Feuerstein, J.

**ORDER**
10-CV- 1644 (SJF) (ETB)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   JUN 2 1 2011   ★

LONG ISLAND OFFICE

On April 13, 2010, Frederick Lockhart ("plaintiff") commenced this action against Two

County Realty LLC ("Two County"), the owner of a shopping center located at 565-583 Uniondale

Avenue, Uniondale, New York, as well as several of its tenants, including, *inter alia*, Sabrina's

Check Cashing Inc. ("Sabrina"), alleging violations of Title III of the Americans with Disabilities

Act (the "ADA"), 42 U.S.C. § 12181, *et seq.*, and the ADA Accessibility Guidelines (the

"ADAAG"), 28 C.F.R. pt. 36, App, A. Pending before the Court is a motion by Sabrina for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion by plaintiff

seeking summary judgment against Two County, and a cross-motion by Two County for leave to

amend its answer pursuant to Rule 15 of the Federal Rules of Civil Procedure. Plaintiff has

withdrawn his claims against Sabrina for violation of the Nassau County Administrative Code. For

the following reasons, Sabrina's motion for summary judgment is granted, plaintiff's motion for

summary judgment is denied, and Two County's motion to amend its answer is granted.

I.    Background

    A.    Factual Background

        1.    Plaintiff's Condition

It is undisputed that plaintiff is paralyzed in his "lower extremities," cannot walk, and requires the use of a wheelchair to move independently. *See* Declaration of Frederick Lockhart, January 24, 2011 ("Pl. Decl.") ¶ 2. He states that he has "frequented" the businesses at Two County's shopping center "on numerous occasions" and has encountered "many difficulties" there. *Id.* ¶ 3.

        2.    Sabrina

Sabrina operates a licensed check cashing store at 571 Uniondale Avenue, Uniondale, New York ("the store"). Sabrina's Motion for Summary Judgment, Affidavit of Jack Kaywood ("Kaywood Aff.") ¶¶ 1, 2. Sabrina leases the store from Two County, but does not lease any area of the parking lot or perform work to the shopping center outside of the "leased premises." *Id.* ¶ 3.

The store contains "only one main counter area" with three (3) "teller station windows," twenty-two (22) feet from the sidewalk entrance of the store. *Id.* ¶ 5. Sabrina keeps an "auxiliary counter" in "immediate proximity" to the main counter, which is thirty-two (32) inches high, has a flat surface that can be used to "complete paperwork to transact business with a teller," and is below a typewritten sign that displays a "handicap symbol" and states "We are handicapped accessible if you require any assistance please do not hesitate to ask." *Id.* ¶¶ 6, 7 *see also* Exhibits G, H, I. The

store's owner states that, "[i]f asked for assistance, a teller will leave their teller station window, exit the security door and go directly to the disabled person and conduct the transaction at the auxiliary counter." Kaywood Aff. ¶ 7. Should a customer seek this assistance, his or her transaction would be completed at the auxiliary counter "without any partition between the employee and the customer." *Id.*

Of the facts cited above, plaintiff objects, in pertinent part, to Jack Kaywood's statement that he is the owner, Plaintiff's Rule 56.1 Statement in Opposition ("Pl. 56.1 Opp.") ¶ 7, and the characterization of the auxiliary counter as a "counter" rather than a "table." *Id.* ¶ 14.

Although defendant does not articulate any specific instances of Sabrina's lack of accessibility in the complaint, he argues in his opposition to the motion that Sabrina violates the ADA for businesses of its type because it fails to provide plaintiff and other wheelchair bound individuals with: "(1) an accessible customer service/sales window, (2) an accessible receptacle to exchange documents and money through the window to a customer service representative, [and] (3) a method to effectively communicate with [Sabrina] employees through the bulletproof window." Memorandum in Opposition at 6. Plaintiff argues that the "auxiliary counter" or "table" does not comply with the requirements in the ADA. Pl. 56.1 Opp. ¶ 14-15.

i. Supplemental Deposition Testimony

In support of its motion, Sabrina provided the deposition testimony of plaintiff's expert witness, Kleo J. King ("King Dep."). King is an attorney employed by the United Spinal Association as the senior vice president of accessibility services. King Dep. at 5-6. King was retained by

3

plaintiff's counsel to "perform an analysis of Sabrina Check Cashing." *Id.* at 13-14. Based upon his investigation, King testified that although improvements could be made, *id* at 17, assuming ADAAG 7.2(2)(ii) applies, the "auxiliary counter" would satisfy its requirements, id. at 24-26, that Sabrina was compliant with ADAAG 4.2.3 because there was "enough wheelchair space to make a [one hundred eighty] 180-degree turn" in the store, *id.* at 30, 33-34, and that "an intercom system [with] a box that is always on [which] transmits [a person's] voice without . . . having to press any buttons . . . [to] people inside the teller windows [who] would automatically talk back" on the auxiliary counter would constitute effective communication with a person in a wheelchair. *Id.* at 35-36.

### 3. Two County

Two County owns and manages a single story commercial shopping center located at the corner of Uniondale Avenue and Jerusalem Avenue in Uniondale, New York. George Konodos Affidavit, March 23, 2011 ¶¶ 1-2. The shopping center is separated from Jerusalem Avenue by a twenty (20) foot sidewalk (the "Jerusalem Avenue sidewalk") and from Uniondale Avenue by a ten (10) foot sidewalk. Declaration of John Meyer, December 21, 2010 ("Meyer Decl.") ¶¶ 7-12.

In support of his motion, plaintiff provides declaration of Kleo J. King as evidence that the Jerusalem Avenue sidewalk has a running slope ranging from nine and two-tenths percent (9.2%) to ten and six-tenths percent (10.6%) and the cross slope of the Jerusalem Avenue sidewalk, as measured from Uniondale Avenue, ranged from two and two-tenths percent (2.2%) to twelve and one-half percent (12.5%). Kleo J. King Declaration, December 22, 2010 ¶¶ 9-11. Plaintiff states that the slope of the Jerusalem Avenue sidewalk creates a "great challenge" to operate his wheelchair,

4

because the slope "may tilt [his] chair over" and if he were to "roll down" the Jerusalem Avenue sidewalk, the cross slope "pushes [his] wheelchair toward . . . Jerusalem Avenue." Pl. Decl. ¶ 4. Plaintiff has provided a photocopy of the "survey map" of the relevant area and the declaration of a retained land surveyor, John Meyer, who states that based upon the survey map, the Jerusalem Avenue sidewalk is part of Two County's property. Mayer Decl. ¶¶ 5-9, Exhibit 1.

Two County objects in pertinent part to Meyer and King's expert opinion pursuant to Rules 56(c)(2) and 26 of the Federal Rules of Civil Procedure respectively on the grounds that plaintiff has failed to establish the authenticity of the survey map, and therefore, Mayer's opinion lacks foundation and, although King's declaration provides expert opinion, he had not been disclosed as required by Rule 26. *See* Two County's Rule 56.1 Statement ¶¶ 9, 12-13.

### B.     Procedural Background

Plaintiff commenced this action on April 13, 2010. On April 14, 2010, plaintiff amended the complaint. ECF No. 2. On July 16, 2010, plaintiff sought leave to file a second amended complaint in order to change the corporate status of Two County, which was granted on August 31, 2010. ECF Nos. 21, 27. The second amended complaint (the "complaint") was filed on September 17, 2010. ECF No. 35.

On October 5, 2010, Sabrina filed a fully briefed motion for summary judgment. ECF No. 44, *et seq.* On November 9, 2010, at a conference before the Court, Sabrina sought leave to supplement its motion with its October 6, 2010 deposition of Kleo J. King and plaintiff sought leave to file a response to Sabrina's reply memorandum. *See* ECF Nos. 60, 65. Sabrina was granted leave

5

to supplement its motion with the deposition transcript, and although plaintiff was given the opportunity to respond the supplemental filing of King's deposition testimony, his application to file a general sur-reply was denied. On November 11, 2010, Sabrina filed King's deposition transcript and identified pertinent areas of testimony in a one (1) page letter. ECF No. 61. On November 29, 2010, plaintiff filed an eight (8) page brief, which he docketed as a "response in opposition to [Sabrina's] motion for summary judgment," to which Sabrina objected as being a sur-reply. *See* ECF Nos. 63, 65. Plaintiff's November 29, 2010 letter will be considered to the extent it responds to King's deposition testimony as filed.

On December 3, 2010, Two County served a motion for summary judgment on plaintiff. *See* ECF No. 68. On December 23, 2010, plaintiff served a cross-motion for summary judgment. On January 24, 2010, Two County sought leave to withdraw its motion on the ground that property surveys submitted by plaintiff in response to Two County's motion indicated that a portion of the Jerusalem Avenue sidewalk may be owned by Two County, "contrary to [its] understanding of the property line," and it needed time to "investigate" plaintiff's assertions. ECF No. 73. The Court granted Two County's request for a conference to discuss future motion practice and related issues. ECF No. 74.

On February 9, 2011, prior to the conference, plaintiff sought leave to file his motion for summary judgment against Two County as unopposed. ECF No. 75. On February 19, 2011, before leave had been granted, plaintiff filed a motion for summary judgment against Two County as unopposed. *See* ECF No. 75. On February 23, 2011, plaintiff's motion was denied with leave to submit, and a motion schedule was set. ECF No. 85. On April 11, 2011, plaintiff filed its fully briefed summary judgment motion against Two County and Two County's cross-motion to amend

the answer to assert two (2) additional affirmative defenses. ECF Nos. 90, *et. seq.*, 103.

II.     Sabrina and Plaintiff's Motions for Summary Judgment

    A.     Rule 56 Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing

7

<u>Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." <u>Id</u>. at 532-33 (quotations and citations omitted).

B.    Title III of the ADA

Title III of the ADA prohibits discrimination against an individual on the basis of disability for the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff must establish "(1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." <u>Roberts v. Royal Atlantic Corp.</u>, 542 F.3d 363, 368 (2d Cir. 2008); <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153, 156 (2d Cir. 2008). The parties do not dispute defendants' classification as commercial facilities and the applicability of the ADAAG to plaintiff's claims.

1.    Applicability of the ADA

The ADA's requirements to accommodate individuals with disabilities applies to facilities constructed "for first occupancy later than [thirty] 30 months after July 26, 1990," 42 U.S.C. §

8

12183(a)(1), as well as facilities have been "altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof." *Id.* § 12183(a)(2). When alterations "affect[] or could affect usability of or access to an area of the facility containing a primary function," the facility is compelled to:

> make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities . . . [however the alterations to accessibility need not be] disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

*Id.* With respect to the shopping center's compliance with the ADA, the two (2) issues before the Court are whether (1) the Two County's modifications are considered to be "alterations" as defined by the ADA, and (2) the plaintiff's proposed alterations to the Jerusalem Avenue sidewalk are readily achievable.

The ADA requires that "altered facilities" be made "'readily accessible and usable' to disabled individuals" Roberts v. Royal Atlantic Corp., 542 F.3d at 369 (citing 42 U.S.C. § 12183(a)). A court must distinguish between alterations that "preserve the status and condition of a facility," which is not under the purview of the ADA, and alterations that are "the equivalent of 'new construction.'" Id. at 370. Several factors may be considered:

> (1) The overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof. (2) The scope of the modification (including what portion of the facility or relevant part thereof was modified). (3) The reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility). (4) Whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty.

9

Id. A plaintiff has the initial burden to identify a modification, and make "a facially plausible demonstration that the modification is an alteration under the ADA," at which point the burden shifts to the defendant to establish that the modification is not an alteration. Id. at 371.

All facilities, including those, "neither new nor altered," are required to remove an architectural barrier "where such removal is readily achievable." Roberts, 542 F.3d at 373 (citing 42 U.S.C. § 12182(b)(2)(A)(iv)). Plaintiff has the initial burden to "articulate a plausible proposal for barrier removal, "the costs of which, facially do not clearly exceed its benefits." Id. (citing Borkowski v. Valley Central Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995)). Defendant then has the burden to demonstrate that "the costs of a plaintiff's proposal would in fact exceed the benefits." Id. Parties may include "both monetary and non-monetary considerations" in their analysis. Id.

### 2. Obligations for Commercial Facilities

Section 7.2 of the ADAAG distinguishes between: (1) areas used for transactions "where counters have cash registers and are provided for sales of distribution of goods or services to the public; and (2) areas used for transactions without a cash register "at which goods or services are sold or distributed" including "ticket counters, teller stations, registration counters in transient lodging facilities, information counters, box office counters and library check-out areas." ADAAG §§ 7.2(1), (2). In areas with cash registers, the facility must provide access to at least one (1) "of each type" at "a portion of the counter which is at least [thirty-six] 36 in[ches] . . . in length with a maximum height of [thirty-six] 36 in[ches] . . . above the finish floor." Id. § 7.2(1). Areas falling within the section requires the facility to provide either:

> (i) a portion of the main counter which is a minimum of [thirty-six] 36
> in[ches] . . . in length . . . with a maximum height of [thirty-six] 36 in[ches]
> . . . ; or
>
> (ii) an auxiliary counter with a maximum height of [thirty-six] 36 in[ches] .
> . . in close proximity to the main counter . . . ; or
>
> (iii) equivalent facilitation . . . shall be provided (e.g., at a hotel registration
> counter, equivalent facilitation might consist of: (1) provision of a folding
> shelf attached to the main counter on which an individual with a disability
> can write, and (2) use of the space on the side of the counter or at the
> concierge desk, for handing materials back and forth).

*Id.* § 7.2(2). Additionally, for all facilities where teller windows have "solid partitions or security glazing to separate personnel from the public," the facility must provide a "method to facilitate voice communication," including, in pertinent part, "intercoms." ADAAG § 7.2(3)

III.  Analysis

    A.  Sabrina

Plaintiff has failed to sufficiently plead a violation of the ADA by Sabrina. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)); Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, ---

U.S. ---,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal,129 S. Ct. at 1949.

The complaint identifies Sabrina as a lessee of a unit at the shopping center and the operator and manager of a check cashing store. Compl. ¶¶ 9-10, 35, 38. With respect to the ADA claims, plaintiff alleges that all of the "[d]efendants have failed to make adequate accommodations and modifications to its [sic] facility," denying plaintiff "the opportunity to participate in or benefit from services . . . on the basis of [his] disability," id. ¶¶ 40-41, failed to fulfil their "statutory obligation to ensure that their policies, practices, procedures and reasonable accommodations for persons with disabilities are addressed," id. ¶ 42, failed to make the facility "fully accessible" to persons with disabilities, id. ¶ 43, and that the facility "has not been designed, constructed, or altered" as required by the ADA. Id. ¶ 44. Plaintiff continues to state seven (7) additional specific failures of the shopping center to accommodate persons with disabilities in violation of the ADA, none of which mention Sabrina or any violations in the store. Although ADA claims have met Rule 8's notice pleading standard where the type of disability is alleged generally, see Dutton v. Swissport USA, Inc., No. 04 CV 3417, 2005 WL 1593969 (E.D.N.Y. July 1, 2005); Lewis v. Regional Transit Service, 424 F.Supp.2d 613 (W.D.N.Y. 2006) (pro se plaintiff), failure to identify any discriminatory conduct can fail to provide the defendant adequate notice of the grounds of a claim. See

<u>Washington v. East Harlem Council for Cmty. Improvement</u>, No. 06-CV-6186, 2006 WL 3497860,

(E.D.N.Y. December 5, 2006); <u>Pond v. Michelin North America, Inc.</u>, 183 F.3d 592, 597-98 (7th

Cir. 1999). Without identifying the manner by which Sabrina has failed to accommodate those with

disabilities, plaintiff fails to provide Sabrina with adequate notice to evaluate the strength of his

claims, remedy the violation, negotiate settlement or prepare a defense. Plaintiff has filed three (3)

versions of the complaint, none of which identify a single violation at Sabrina's store. Therefore,

plaintiff's claims against Sabrina have failed to satisfy the minimal pleading requirements of Rule

8.

In any event, plaintiff has failed to establish the existence of a genuine issue of fact regarding

Sabrina's compliance with the ADA. Despite the absence of an identified ADA violation, Sabrina

has presented evidence that the existence of the "auxiliary counter" complies with the requirements

set forth in ADAAG § 7.2(2)(ii) for facilities which sell and distribute goods or services but do not

have cash registers. Plaintiff contends that Sabrina has a cash register and therefore should comply

with ADAAG § 7.2(1), that the "auxiliary counter" fails to comply with ADAAG § 7.2(2), that

Sabrina does not provide auxiliary aids to "ensure effective communication" pursuant to 28 C.F.R.

§ 36.303(c), and that Sabrina has failed to accommodate Plaintiff's disabilities generally.

Plaintiff provides no evidence of the existence of cash registers at Sabrina. Instead, plaintiff

cites to Jack Kaywood's affidavit which states that each customer transaction is recorded in a

computer system, *see* Memorandum in Opposition ("Pl. Opp.") at 8, and asks the Court to presume,

"logically," that each teller window has a cash register in order to engage in sales of goods and

services. Plaintiff argues that Sabrina is not a bank but a retail business, and therefore should

comply with ADAAG § 7.2(1). Sabrina provides a photo of the service side of the counter which

13

shows a computer on the counter and a separate wooden drawer beneath the counter, Kaywood Aff., Exhibit E, and in its reply, a Supplementary Affidavit by Jack Kaywood, October 4, 2010 ("Kaywood Aff. II") states that the computer and wooden cash drawer are separately operated, and the drawer is opened manually. Kaywood Aff. II ¶¶ 2-3.

ADAAG § 7.2(1) refers to facilities that would traditionally be considered a retail business, providing goods and services from behind a counter with a cash register. ADAAG § 7.2(1). These facilities are distinguished from areas where goods and services are sold that do not have cash registers, including "teller stations" and "ticketing counters." ADAAG § 7.2(2). The relevant inquiry is whether an area at a facility has cash registers, not whether it sells goods or can be subjectively described as a "retail store" or a "bank," as plaintiff contends. Even by plaintiff's proposed definition of a cash register as "a machine that tabulates the amount of sales transactions, makes a permanent and cumulative record of them, and has a drawer in which cash can be kept," Pl. Opp. at 8 n.3, the evidence does not support the claim that Sabrina's store uses cash registers. See, e.g., National Cash Register Co. v. American Cash Register Co., 53 F. 367, 370-71 (3d Cir. 1892) (patent infringement decision concerning a recently invented "cash registering apparatus" described as "a series of keys with a drawer holder and other mechanism . . . [which] when and as operated, would or could unlock a drawer . . . and permit a spring to open it."). Upon review of the evidence, there is no issue of fact that Sabrina's counters do not have a cash register, and therefore must comply with ADAAG § 7.2(2).

Plaintiff does not refute Sabrina's evidence that the "auxiliary counter" is less than thirty-six (36) inches in height and in close proximity to the main counter, as required by ADAAG § 7.2(2)(ii). Plaintiff's own expert testified that the table satisfies the explicit requirements of ADAAG §

14

7.2(2)(ii). *See* King Dep. at 23-26. Instead, plaintiff's opposition raises for the first time that the use of a table violates ADAAG § 4.2.3. Aside from the fact that opposition to a motion for summary judgment is not the appropriate place to raise or articulate a new claim, plaintiff fails to provide law or evidence to support the argument.

ADAAG § 4.2.3 states that "[t]he space required for a wheelchair to make a [one hundred eighty] 180-degree turn is a clear space of [sixty] 60 in[ches] . . . diameter . . . or a T-shaped space." ADAAG § 4.2.3. ADAAG § 4.2, titled "Space Allowance and Reach Ranges" contains several definitions of what space is required for certain wheelchair activities. ADAAG § 4.2.3 does not create a requirement for auxiliary tables to comply with ADAAG § 7.2.

Plaintiff argues, without support, that "were he to move backward [from the table] by as little as six [6] inches, he would be encroaching onto space provided for a customer standing at the middle sales window" in violation of ADAAG § 4.2.3. Pl. Opp. at 12. Plaintiff provides a photograph that purports to demonstrate that, were he to use the table, "he would be obstructing [two] 2 customer service sales windows" because there is not enough clear floor space "for a wheelchair-bound individual to maneuver." *Id.* at 12. Plaintiff does not explain the applicability of ADAAG § 4.2.3 to his claim and does not provide any evidence to demonstrate that there is insufficient turning space. Moreover, plaintiff's expert testified that there is sufficient wheelchair turning space at Sabrina to comply with ADAAG § 4.2.3. *See* King Dep. at 30-34.

Sabrina has met the alternative requirement of ADAAG § 7.2(2)(ii), and thus has satisfied its obligations under the ADA, the Court need not decide whether Sabrina has complied with ADAAG § 7.2(2)(iii).

Insofar as plaintiff argues that Sabrina has failed to comply with 28 C.F.R. § 36.303(c) by

15

failing to provide auxiliary aids, "auxiliary aids and services" are defined to include " effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing[,] . . . effective methods of making visually delivered materials available to individuals who are blind or have low vision[,] . . . modification of equipment[, and] . . . similar services and actions." 28 C.F.R. § 36.303(b). Plaintiff has not alleged a hearing or sight impairment and does not have standing to assert a claim of discrimination against those with disabilities other than his own. See Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000) (citing Lewis v. Casey, 518 U.S. 343, 358 & n. 6, 116 S. Ct. 2174, 135 L. Ed.2d 606 (1996)). However, even if 28 C.F.R. § 36.303 required Sabrina to provide auxiliary aids to not require a wheelchair bound plaintiff to "raise his voice to be heard," see Plaintiff Affidavit in Opposition, September 24, 2010 ¶ 6, Sabrina employees transact business at the auxiliary counter in person, obviating plaintiff's "need" to raise his voice. See Kirkwood Aff. II ¶ 6. Moreover, since becoming aware of plaintiff's "auxiliary aids" claim, Sabrina has installed an intercom system on the auxiliary table that "transmits a person's voice by wire into a speaker . . . where the teller can listen and respond back," and that "no buttons need to be pressed" in order to operate the intercom. Id. ¶¶ 6-8. This intercom provides a wheelchair bound individual with direct "effective communication" with the tellers in order to secure goods and services as required by 28 C.F.R. § 36.303(c). Even if the 28 C.F.R. § 36.303 claim were properly presented, plaintiff has failed to allege injuries-in-fact that are not cured by the intercom system.

For the foregoing reasons, Sabrina has met its burden and plaintiff has failed to present evidence that creates a genuine issue of fact with respect to Sabrina's alleged non-compliance with the ADAAG and the ADA. Sabrina's motion for summary judgment is granted, and the claims against Sabrina are dismissed with prejudice. The Court declines to exercise jurisdiction over

16

plaintiff's remaining state law claim. As amendment would not cure the deficiencies in the complaint, plaintiff's motion to amend is denied.

B.     Two County

Plaintiff moves for summary judgment on its claim that Two County has failed to make the Jerusalem Avenue sidewalk an accessible route, violating the ADA and the ADAAG. Memorandum in Support of Motion ("Pl. Mot.") at 7. Two County contends that plaintiff has not established the absence of an issue of material fact as to (1) the existence of an "alteration," and (2) that his proposed modifications are readily achievable. Two County's Memorandum in Opposition ("T.C. Opp.") at 6-10.

1.     Alterations

Plaintiff provides a 2009 building permit application by the town of Hempstead which appears to seek to "maintain: existing office w/ interior alterations" costing sixty-five thousand dollars ($65,000.00) at 575 Uniondale Avenue. Pl. Mot. Exhibit 8. The building permit application names the architect, and that Two County authorized the work to be done. *Id.* The "applicant" is a "drafting services" business at the same address of the architect. *Id.* Plaintiff also states that Two County has "received [nineteen] 19 construction permits for alterations made after the effective date of the ADA," Plaintiff Rule 56.1 Statement ¶ 10, and cites to a photocopy titled "BDMS Search Results Data, Using Search Criteria of - 50-384-00250." Pl. Mot. Exhibit 7. Plaintiff provides no

other evidence of alterations.

The evidence provided by plaintiff is insufficient to establish the absence of an issue of whether defendant actually made alterations that would require compliance with the ADA. The building permit application does not establish the intended alterations, the area for which they were proposed, responsibility for completing them and whether they were actually completed. The other document, purportedly showing nineteen (19) alterations, is not properly authenticated, and therefore not admissible at this time. In any event, it does not adequately identify the type of alterations made, the cost or scope of the modifications or reasons for making them. Assuming plaintiff is able to meet his initial burden pursuant to Roberts, 542 F.3d at 370, the documents do not satisfy his burden pursuant to Rule 56. If Two County has not altered the facility within the meaning of the ADA, plaintiff will not be able to state an ADA claim alleging denial of an accessible route.

Plaintiff's motion for sanctions on the basis that Two County's declaration disputes its ownership of the Jerusalem Avenue sidewalk and that alterations have been made is denied.

2.      Readily Achievable Modifications

In the event that Two County is not subject to 42 U.S.C. § 12183(a), plaintiff has not demonstrated the absence of an issue with respect to whether the removal of an architectural barrier is readily achievable by Two County. Plaintiff has proposed a modification to alter the slope of the Jerusalem Avenue sidewalk at a cost of approximately ten thousand dollars ($10,000.00), as estimated by Kleo J. King. *See* Kleo J. King Declaration, December 22, 2010 ¶¶ 13-15, Exhibit 1. Two County has provided an affidavit of John C. Becker, a structural engineer, estimating the

proposed alterations' cost of approximately ninety-four thousand five hundred dollars ($94,500.00). *See* John Becker Affidavit, Hayden J. Brill Declaration, Exhibit C. Two County has presented an issue of fact as to the actual cost of the improvements, and the nine (9) fold difference between the parties' estimated costs necessarily creates an issue as to whether the cost of the proposal warrant its alleged benefits pursuant to the ADA. Plaintiff's argument that the Becker affidavit is inadmissible because (1) it is not based upon his personal knowledge of the sidewalk and (2) it fails to provide clear facts to support how he arrived at his estimate is unavailing. *See* Plaintiff's Reply Memorandum at 7-8. Becker's affidavit is sworn and notarized, and incorporates thirty-five (35) pages supplementing his opinion. To the extent plaintiff disputes the accuracy of Becker's analysis of the cost, plaintiff has identified a question of a material fact that must be determined by a fact finder. Therefore, plaintiff's motion for summary judgment on the issue of whether the proposed alterations to the Jerusalem Avenue sidewalk are readily achievable is denied.

### 3.    Two County's Potential Indemnification

Plaintiff's motion for summary judgment on the issue of whether Two County may claim indemnification from its tenants for their obligations arising from the ADA is denied for lack of standing. Two County does not dispute a landlord's liability pursuant to the ADA. T.C. Opp. at 10. Plaintiff has not established any injury-in-fact based upon indemnification owed to Two County by its tenants.

19

4. State Law Claims

Plaintiff's claims of discrimination in violation of New York State's Human Rights Law and Civil Rights Law are predicated upon Two County's alleged failure to accommodate plaintiff's disabilities pursuant to the ADA. Plaintiff argues that his state law claims are based upon Two County's discrimination against plaintiff's disabilities, its alleged failure to provide reasonable accommodation, and the existence of architectural barriers that allegedly interfere with plaintiff's accessibility to the shopping center. The complaint does not allege any facts specific to plaintiff's state law claims. Compl. ¶¶ 54-64. The only undisputed basis of these claims is the degree of the running slope and cross slope of the Jerusalem Avenue sidewalk. Plaintiff has failed to prove that a sloping sidewalk abutting a defendant's facility is a violation of New York State's Human Rights Law and Civil Rights Law as a matter of law. Therefore, plaintiff's motion for summary judgment is denied.

IV. Two County's Motion to Amend its Answer

Two County has moved to amend its answer to include the affirmative defense that the proposed modifications to the Jerusalem Avenue sidewalk are not readily achievable and that the proposed modifications are "disproportionate to any alleged alterations as defined by the ADA." T.C. Opp. at 3-4. Two County argues that there is no prejudice to plaintiff and the amendment will not significantly delay the proceedings because discovery remained open for approximately three (3) months after the motion was made, and plaintiff has specifically addressed the issue in its summary

20

judgment motion. *Id.* Two County argues that it had a good faith belief that it did not have any ownership interest in the Jerusalem Avenue sidewalk when the original answer was made, but now believes that it "own[s] at least a portion of that sidewalk area." *Id.* This is supported by the procedural history of the case. Plaintiff objects on the ground that Two County is not acting in good faith and that amendment would be futile. However, amendment is not futile and plaintiff does not provide any evidence that Two County did not have a good faith belief in its ownership interests. Plaintiff asks the Court to find Two County's belief "simply incredible" based upon a survey submitted by plaintiff and an application for building permit for one of its units in 2009. Plaintiff's Reply at 1-2. This is not sufficient to demonstrate that Two County exercised bad faith to delay the case. As there has been no showing of Two County's bad faith and no prejudice to plaintiff, Two County's motion to amend is granted. Two County is to file its amended answer within fourteen (14) days of entry of this order.

V.    Conclusion

For the foregoing reasons, Sabrina's motion for summary judgment is granted and the claims against Sabrina are dismissed with prejudice; plaintiff's motion for summary judgment is denied; Two County's motion to amend is granted. Two County is directed to file its amended answer

21

within fourteen (14) days of entry of this order.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 21, 2011
      Central Islip, New York